UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSEPH PETRUSO and SHARON ANNE
O'CONNOR-PETRUSO,

                                                                    MEMORANDUM AND ORDER

                                        Plaintiffs,                 CV 06-2632

                    -against-                                       (Wexler, J.)

DOUGLAS C. SCHLAEFER, CARMINE
BICHETTI, PATRICK BROSTOWN, MICHAEL
MEEHAN and BRENDAN FAHEY, Constituting
the Board of Zoning Appeals of the Incorporated
Village of Manorhaven and THE VILLAGE OF
MANORHAVEN, LINDA DLUGOLECKI and
CHESTER DLUGOLECKI , MAYOR AND
VILLAGE TRUSTEES OF VILLAGE OF
MANORHAVEN INCLUDING NICHOLAS B.
CAPOZZI, JENNIFER WILSON-PINES, JAMES A.
TOMLINSON, DAVID NICK DILUCIA and
JOHN M. DILEO, JR.,

                                        Defendants.

-------------------------------------------------------------------X

        LEDWITH & ATKINSON
        BY: PETER K. LEDWITH, ESQ.
        Attorney for Plaintiffs
        14 St. James Place
        Lynbrook, New York 11563

        JASPAN, SCHLESINGER HOFFMAN LLP
        BY: LAUREL R. KRETZING, ESQ.
            JOHN C. FARRELL, ESQ.
        Attorneys for Defendants Schlaefer, Bichetti,
        Brostown, Meehan and Fahey as the Board of Zoning Appeals of the
        Incorporated Village of Manorhaven
        300 Garden City Plaza
        Garden City, New York 11530

1

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP
BY: ROBERT CABBLE, ESQ.
Attorneys for Defendants Village of Manorhaven, Capozzi, Wilson-Pines,
Tomlinson, DiLucia and Dileo, Jr.
69 East Jericho Turnpike
Mineola, New York 11501

CAHN & CAHN, LLP
BY: DANIEL K. KAHN, ESQ.
Attorneys for Defendants Linda and Chester Dlugolecki
445 Broadhollow Road Suite 332
Melville, NY 11747

WEXLER, District Judge

In this lawsuit Plaintiffs Joseph and Sharon Anne O'Connor-Petruso (collectively "Plaintiffs" or the "Petrusos"), allege that actions taken by Defendants in connection with Plaintiffs' residential building permit violated their civil rights. Named as defendants are Douglas Schlaefer, Carmine Bichetti, Patrick Brostown, Michael Meehan and Brendan Fahey. These individuals are named in their capacities as the Village of Manorhaven's Board of Zoning Appeals (the "BZA"). Also named as Defendants are the Village of Manorhaven (the "Village") and the individuals comprising the Village Board of Trustees – defendants Nicholas Capozzi, Jennifer Wilson-Pines, James Tomlinson, David Nick DiLucia and John DiLeo, Jr. (collectively the "Village Defendants"). Finally, Plaintiffs name two individuals, Linda and Chester Dlugolecki (the "Dlugoleckis"). The Dlugoleckis are Plaintiffs' neighbors, at whose behest the other Defendants are alleged to have acted.

Presently before the court are the motions of all Defendants to dismiss the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. For the reasons that follow, the motions are granted in part and denied in part.

2

# BACKGROUND

## I. Factual Background

The facts set forth below are drawn from Plaintiffs' complaint. The facts are construed in the light most favorable to Plaintiffs, the non-moving parties and assumed, at this juncture, to be true. Facts are also drawn from state court judicial records presently before the court. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (in context of motion to dismiss court may consider matters of which judicial notice may be taken as well as documents in plaintiff's possession which are relied upon in bringing suit).

### A. The Petrusos and Issuance of their Building Permit

The Petrusos are residents and home owners in the Village of Manorhaven, located in Nassau County, New York. Plaintiffs reside in a one family home to which they desired to construct a rear addition to be used as a family room. To that end, Plaintiffs hired an architect to prepare plans for the addition. Those plans showed that the contemplated addition would result in the house covering 26% of Plaintiffs' property. In view of the fact that the Village Code provides for a maximum lot coverage of 25% for a single family home, Plaintiffs petitioned for a variance. That variance was granted by the BZA on June 8, 2004. Thereafter, the Manorhaven Building Department Superintendent raised an issue with respect to the adequacy of rainwater runoff. Plan amendments were filed to address this issue. Additionally, in October of 2004, Plaintiffs filed an amendment showing the addition of a roof deck. Plaintiffs' formal plans were approved on November 10, 2004. They were issued a building permit at that time and construction began.

B. **The Dlugoleckis and Their Complaints Regarding the Rooftop Deck**

The record indicates a long period of animosity between the Dlugoleckis and the Petrusos, who are next door neighbors. In addition to the events that led to this lawsuit, there is record evidence that the Petrusos complained to the Village about the Dlugoleckis and that the Dlugoleckis lodged complaints regarding the Petrusos. The first record evidence of the Dlugoleckis' complaint about the Petruso home extension came in the form of a December 2004 written complaint to the Village regarding the construction of the Petruso's rooftop deck. There is also evidence that prior to and after that letter, Mrs. Dlogolecki made several trips to the Village Hall to complain about the construction. Despite the written and oral complaints, there is no evidence of the filing of a formal appeal to the November 2004 permit by the Dlugoleckis until June of 2005. By that time, Plaintiffs allege that their construction was 90% complete.

C. **The Appeal**

The Dlugoleckis' filed an appeal of the grant of the Petruso building permit on June 5, 2005. In view of the November 2004 issuance of the permit, and the fact that the Village Code provides that an appeal from a permit grant must be made within thirty days of its issuance, Plaintiffs argue that the appeal was clearly untimely. Plaintiffs further allege, that on May 31, 2005, a series of events, orchestrated to allow for a late appeal, was set into motion. Specifically, it is alleged that Defendant Schlaefer, the chairman of the BZA, with full knowledge of the BZA and the Village Defendants, undertook to create a fictitious set of circumstances aimed at allowing the Dlugoleckis to file a late appeal. Those events center around the incorporation of the roof deck into the Petrusos' building plan – an event that took place in October of 2004.

Plaintiffs allege that on May 31, 2005, BZA Chairman Schlaefer transmitted an e-mail to

4

the Village Clerk ("Ronnie"). That e-mail states that a "determination" was needed on "the legality of the deck/patio from the Superintendent of Buildings so Dlugolecki can 'challenge' the determination." The e-mail makes reference to the fact that the Dlugoleckis had only thirty days to challenge Plaintiffs' building permit, which time period "may" have expired. The e-mail asks Ronnie to check on the date that revised plans were approved by "Len," a reference to Len Baron, the Village Building Superintendent ("Baron"). In response to the e-mail, Ronnie is alleged to have stated that she spoke to Chris Coschignano (the Village Attorney) who told her that the Petruso case could not be re-opened. A handwritten note is alleged to have been appended to the e-mail stating "Len - This needs to be done as per Chris C." It is signed with a handwritten "R."

Three days after this e-mail exchange, Baron wrote a letter to the Dlugoleckis, dated June 3, 2005. This letter states Baron's understanding as to the Dlugoleckis' belief that the Petrusos' rooftop structure was a deck. Baron explains that because the structure was actually a "terrace," it was exempt from the requirement of a variance. Two days after issuance of this letter, the Dlugoleckis filed an appeal. The appeal was placed on the BZA calendar for June 22, 2005 – a calendar date that is alleged to have been in violation of the Village Code's ten day notice requirement.

The Petrusos hired counsel and appeared before the BZA. At the hearing, the Petrusos argued that: (1) the statue of limitations as to the appeal had expired; (2) the June 3, 2005 letter from Len Baron did not constitute a proper basis for any new appeal; (3) the Dlugoleckis had notice of the November 2004 permit and (4) the completion of the construction gave the Petrusos a vested right to the permit that could not be vacated. Despite these arguments, the BZA granted the appeal. The grant of the appeal was oral, and a written decision was not filed until five

5

months later. A time period which, according to the Petrusos, was in violation of New York

State Village Law, which requires that such decisions be filed within 62 days of the close of a

hearing.

D.    The Decision of the BZA

As to the timeliness issue, the BZA found that since Baron's June 3, 2005

correspondence to the Dlugoleckis was the only "formal decision" pertaining to the deck, it

constituted a separate basis for appeal. Therefore, the June 5, 2005 appeal was held to have been

timely filed. On the merits, the BZA decision focused on that part of the Petruso building permit

relating to the rooftop structure. The decision states that the initial lot coverage variance was

sought without disclosing the contemplated rooftop structure. Although plans submitted as early

as October of 2004 were acknowledged to show this structure, it was held that the Building

Superintendent's approval was based upon the mistaken belief that the structure was not a zoning

issue. The Board further found that the November 2004 stamped approval of the plan was

"placed in the building file without actual or constructive notice to anyone."

The BZA disagreed with Superintendent Baron's finding that the rooftop structure was a

"terrace" and therefore exempt from a variance requirement. Instead, the BZA held that the

structure was, indeed, a deck and approval thereof was subject to approval by the BZA. It was

therefore held that the determination of Superintendent Baron with respect to that portion of the

permit should be considered null and void.

E.    State Court Proceedings

Following the decision of the BZA, the Petrusos commenced a state court proceeding

pursuant to Article 78 of the New York CPLR ("Article 78") against the BZA and the Village. In

addition to claiming violation of state laws concerning timeliness and other issues, the Petrusos argued, in a second amended petition before the Article 78 court, that the Chairman of the BZA deliberately attempted to deprive the Petrusos of their constitutional rights pursuant to Section 1983.

In a decision dated September 11, 2006, the Article 78 court rejected the argument that the BZA decision must be reversed on the ground that the factual findings were untimely issued. The court agreed, however, with the Petrusos' argument as to the timeliness of the appeal. The court held that the Dlugoleckis were aware of the rooftop structure by December 2004, when they wrote to the Village with their complaint. In view of this fact, the appeal, filed six months later, was held to be untimely.

The court disagreed specifically with the BZA/Village argument that the June 2005 appeal was a timely appeal of the June 3, 2005 letter. This letter was held to be no more than an explanation for the earlier finding supporting the November 2004 permit issuance. It was further held that the internal e-mails, referred to above, "may well have been issued in an attempt to revive what [defendants] themselves perceived to be a potentially time-barred appeal." Finally, the court declined to exercise its discretion to rule on the Petrusos' claim of a civil rights violation, on the ground that the petition asserting the claim was made without the required formal request to file. In conclusion, the Article 78 court held that since the Dlugoleckis' appeal was untimely, the BZA decision should be annulled and the petition granted to the extent set forth in the decision.

II.    Plaintiff's Claims

Plaintiffs, alleging violations of their rights pursuant to the due process and equal

protection clauses of the United States Constitution, assert claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. §1986 ("Section 1986"). Plaintiffs' first cause of action, asserted against the BZA Defendants, states that these defendants acted "knowingly and wilfully and with the intent of depriving Plaintiffs of their rights to property and equal protection by conspiring to wrongfully revoke Plaintiffs' building permit."

The second cause of action, naming the Village Defendants, asserts that these defendants were aware of the plan of the BZA/ Dlugolecki plan, and of the impending deprivation of Plaintiffs' Constitutional rights. It is further alleged that these Defendants "neglected to prevent and refused to prevent said wrongful act." These acts are alleged to have violated Sections1983 and 1986.

Plaintiffs' final cause of action is asserted against the Dlugoleckis. These Defendants are alleged to have engaged in a concerted plan of action with the other Defendants to disparage the Building Superintendent and to deprive Plaintiffs of their constitutional rights by wrongfully revoking the building permit. Such conduct is alleged to constitute a conspiracy in violation of Section 1983.

III.    Defendants' Motions to Dismiss

Each of the groups of Defendants move to dismiss all claims. Dismissal of Plaintiffs' substantive due process claim is sought on the grounds that Plaintiffs can show neither a valid property right to the permit nor that the permit was denied on arbitrary or irrational grounds. Dismissal of the Petrusos' equal protection claim is sought on the ground that Plaintiffs can show neither that they were treated differently from any similarly situated individuals nor that any such treatment was based upon any impermissible consideration, including malicious or bad faith

8

intent to injure.

In addition to the grounds stated above, the Village Defendants seek dismissal of the official capacity claims on the ground that they are superfluous in light of the naming of the Village as a defendant. Additionally, the Village argues that Plaintiffs fail to properly allege a Section 1986 conspiracy or any theory sufficient to support a claim pursuant to Section 1983.

The Dlugoleckis, named in this civil rights lawsuit as conspirators, argue first that this action is moot because Plaintiffs prevailed in their Article 78 proceeding. They seek dismissal of any conspiracy claim on the ground that the complaint is too vague to support any such claim.

After outlining the applicable legal principles the court will consider the merits of the motions.

## DISCUSSION

I.    General Principles

A.    Standards For Motion to Dismiss

Defendants' motions are to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). When considering a motion to dismiss for failure to state a claim, the court can consider only the facts as set forth in the complaint or documents attached thereto. When considering the facts pled, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59, 63 (2d Cir. 1997). A complaint should not be

dismissed simply because a plaintiff is unlikely to succeed on the merits. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). With these principles in mind, the court turns to the merits of Defendants' motions.

B.    The Section 1983 Claims: General Principles

To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), plaintiff must show a deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). The constitutional rights alleged to have been violated here are Plaintiffs' rights to due process and equal protection of the law.

II.    Due Process Claim

A.    Legal Principles

Plaintiffs claim denial of their right to substantive due process.[1] Substantive due process circumscribes an "outer limit" on permissible governmental action. Natale, 170 F.2d at 263. Such rights are violated only by conduct "so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).

While Section 1983 is often used as a vehicle to challenge local land use decisions, federal judicial review of these decisions is extremely deferential. As often stated, federal courts

---

[1]    Although the complaint states only a deprivation of "due process," without stating whether the deprivation was of procedural or substantive rights. Plaintiffs' memorandum of law in the context of this motion, however, makes clear that their claim is for deprivation of substantive due process rights. In any event, the availability of the Article 78 proceeding provided Plaintiffs with all of the procedural due process rights to which they were due. See Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877, 881-82 (2d Cir. 1996); Whiting v. Incorporated Village of Old Brookville, 8 F. Supp.2d 202, 211 (E.D.N.Y. 1998).

hearing civil rights cases do not sit as zoning boards of appeal over local zoning decisions. Natale, 170 F.3d at 263, quoting, Village of Belle Terre v. Boras, 4167 U.S. 1, 13 (1974) (Marshall, J., dissenting). The mere violation of state zoning laws is not sufficient to demonstrate conduct so outrageous as to violate the substantive component of the due process clause. Natale, 170 F.3d at 262. Indeed, even a state court ruling that state zoning laws have been violated is not, standing alone, sufficient to constitute a substantive due process violation. RRI Realty v. Incorporated Village of Southampton, 870 F.2d 911, 912 (2d Cir. 1989), cert. denied, 493 U.S. 893 (1989).

To demonstrate a violation of due process rights based upon a zoning decision, a plaintiff must first demonstrate the possession of a federally protected property right to the relief sought. Lisa's Party City, 185 F.3d at 16; Natale, 170 F.3d at 263; Penlyn Development Corp. v. Incorporated Village of Lloyd Harbor, 51 F. Supp.2d 255, 261 (E.D.N.Y. 1999). It is only when such a right is established that the court may turn to a discussion of the second prong of the due process analysis – whether defendant acted in an arbitrary or irrational manner in depriving plaintiff of his protected right. See, e.g., Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996).

A protected property interest may, in limited circumstances, include the right to use one's land in a certain way. In such cases a "right," such as a right to a permit or a change in zoning, may constitute a protected property right, the denial of which implicates the protections of the due process clause. RRI Realty, 870 F.2d at 915. Such a property right exists, however, only if the plaintiff can show a "clear entitlement" to the relief sought, Natale, 170 F.3d at 263; a mere "abstract need or desire" is insufficient. RRI Realty, 870 F.2d at 915, quoting, Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

11

The question of entitlement turns on whether the local authority has discretion to deny what is sought or, in the alternative, whether relief must be granted based upon objectively ascertainable criteria. Where discretion is present there can be no entitlement. Natale, 170 F.3d at 263; Cathedral Church of the Intercessor v. Incorporated Village of Malverne, 353 F. Supp.2d 375, 384 (E.D.N.Y. 2005). The issue to be examined is not merely whether the rejection of plaintiff's application was arbitrary and capricious. Instead, the issue is whether, in the absence of the alleged due process violation, there would have been "either a certainty or a very strong likelihood that the application would have been granted." RRI Realty, 870 F.2d at 917, quoting, Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985).

The Yale Auto Parts "entitlement" test is applied with "considerable rigor." RRI Realty, 870 F.2d at 918. Most important to consider is the degree of discretion afforded the local authority, rather than the "estimated probability" of favorable action upon plaintiff's application. Id. Even if "objective observers would estimate that the probability of [obtaining the relief sought] was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." RRI Realty, 870 F.2d at 918. A protected property interest will be found only if the degree of discretion afforded the local authority is so narrow that approval is "virtually assured." Id.

The issue of whether a protected property interest exists is a mater of law for the court to decide. Id. Although the presence of discretion will almost certainly defeat the finding of a protected property interest, every application that might somehow be the subject of a discretionary decision is not removed from constitutional protection. Thus, while the standard is rigorous, a "theoretical possibility of discretionary action does not automatically" remove the

12

action sought from the realm of the protected property interest. <u>Sullivan v. Town of Salem</u>, 805 F.2d 81, 85 (2d Cir. 1986).

Because the court considers the property right issue as a threshold matter, a civil rights due process claims may be rejected without the necessity of exploring whether the local authority has acted in an arbitrary manner. <u>See</u> e.g., <u>Crowley</u>, 76 F.3d at 52. Specifically, in cases where there is no "entitlement," and therefore no protected property interest, it will matter not how the regulator's actions are characterized. The case may be dismissed at the outset based upon the lack of a constitutionally protected property interest. <u>RRI Realty</u>, 870 F.2d at 918. With these principles in mind, the court turns to consider whether the Petrusos had a constitutionally protected right to the building permit.

B.    Sufficiency of the Due Process Claim

The protected property right or "entitlement," forming the basis of Plaintiffs' due process challenge is their right to the permit. There can be no question but that the BZA possesses the discretion to grant or deny the permit to build in excess of the lot percentage set by law. There is similarly no question as to the BZA's ability to decide upon the legality of a rooftop deck. Under these circumstances, it is clear that the discretion possessed by the BZA precludes the argument that any individual has a constitutionally protected property interest in the grant of the permit. Plaintiffs' claim of entitlement here, however, rests not only on a general argument of entitlement, but primarily on the argument that the near completion of construction gave Plaintiffs a vested right to the permit under New York State law. The court disagrees.

Plaintiffs' argument would prevail only if the near completion of construction would somehow divest the BZA of discretion to revoke a building permit. This estoppel argument,

13

however, has no foundation in New York law. Instead, New York law is clear that estoppel cannot be invoked against a municipality to prevent the revocation of a permit. See Parkview Assocs. v. City of New York, 71 N.Y.2d 274, 279, 525 N.Y.S.2d 176, 178-79 (1988). Thus, where a zoning board finds that a permit was issued in error that permit may be revoked, even in cases where construction has taken place. 71 N.Y.2d at 282; 525 N.Y.S.2d at 178-79. Neither estoppel nor laches may be invoked against a municipality to prevent it from correcting errors, "even when there are harsh results." Parkview Assocs. v. City of New York, 71 N.Y.2d 274, 282, 525 N.Y.S.2d 176, 178-79 (1988) (internal citations omitted); see Board of Trustees of Village of Sackets Harbor v. Sackets Harbor Leasing Co., LLC, 26 A.D.2d 769, 771, 809 N.Y.S.2d 356, 358 (4th Dep't 2006).

In view of the fact that New York law clearly allows for the revocation and/or modification of a building permit, even in cases where construction is essentially complete, Plaintiffs cannot show the lack of discretion to revoke their permit. Consequently, they cannot show a constitutional entitlement to a permit sufficient to support a due process violation. Because Plaintiffs have no entitlement to a building permit, their due process claim fails and it is not necessary to reach the question of whether or not the acts alleged rise to a level sufficient to find a violation of substantive due process.

III.  Equal Protection Claim

   A.  Legal Principles

The Fourteenth Amendment right to Equal Protection of the Law is "essentially a direction that all persons similarly situated be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Disabled American Veterans v. United States Dep't of

14

<u>Veterans Affairs</u>, 962 F.2d 136, 141 (2d Cir. 1992). While an equal protection claim may be based upon the allegation that plaintiff was a victim of discrimination due to membership in a protected class, <u>Giano v. Senkowski</u>, 54 F.3d 1050, 1057 (2d Cir. 1995), the right to equal protection also extends to individuals who allege disparate treatment based upon ill will or without rational basis. <u>Harlen Assocs. v. Incorporated Village of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001). To establish an equal protection violation in a zoning context, a plaintiff must show treatment different from other similarly situated individuals. <u>Harlen</u>, 273 F.3d at 499. Similarity is generally a factual issue for a jury. That rule is "not absolute, however, and a claim can be subject to summary dismissal where no rational jury could find similarity." <u>Harlen</u>, 273 F.3d at 499 n.2.

In addition to a showing of similarity, Plaintiffs must also show either that the disparate treatment: (1) was based upon "'impermissible considerations," including the "malicious or bad faith intent to injure," or (2) was wholly irrational or arbitrary. <u>Harlen</u>, 273 F.3d 500, <u>see</u> <u>Bizzarro v. Miranda</u>, 394 F.3d 82, 86 (2d Cir. 2005); <u>see also</u> <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000). The latter type of equal protection claim focuses on whether the conduct of the local official was rationally related to his work. In the zoning context, a decision can be considered irrational only when a board acts "with 'no legitimate reason for its decision.'" <u>Harlen</u>, 273 F.3d at 500, quoting, <u>Crowley v. Courville</u>, 76 F.3d 47, 52 (2d Cir. 1996).

B.    <u>Sufficiency of the Equal Protection Claim</u>

Plaintiffs are not, and do not argue to be, members of any suspect or identifiable class. Instead, Plaintiffs allege a violation of their equal protection rights based upon an allegation of selective enforcement of Village zoning laws. Such enforcement is alleged to be based upon

15

malicious and arbitrary treatment. As noted above, Plaintiffs can state such a claim only by a showing of disparate treatment coupled with a showing of either ill will or arbitrary and irrational official action. Defendants argue that Plaintiffs' complaint fails with respect to each element.

In this circuit there is no requirement that a plaintiff detail, with particularity, instances demonstrating the disparate treatment alleged in the complaint. It is sufficient to plead disparate treatment on information and belief. DeMuria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003). Measured against this standard, Plaintiffs' complaint is sufficient in this regard.

The complaint is also sufficient in the pleading of either ill will or irrational action by Defendants. Allegations regarding e-mails sent with the improper purpose of rendering the Dlugoleckis' appeal timely, satisfy the pleading requirement. After discovery, it may very well become clear that these e-mails, coupled with other facts, demonstrate a complete lack of ill will and support the claim that Defendants acted rationally. Discovery may also reveal that the Petrusos are unable to come forward with evidence that they were treated differently from other similarly situated individuals. At this stage of the proceedings, however, it cannot be said that the pleading is insufficient. The court therefore denies the motion to dismiss the equal protection claim for failure to state a claim and allows the claim to proceed to discovery.[2]

In light of the fact that the equal protection claim remains, the court turns to a discussion of arguments advanced by individual groups of Defendants.

---

[2]     Defendants cite to cases awarding judgment to defendants on equal protection claims. See, e.g., Crowley, 76 F.3d at 52-53. Most of those cases, however, were decided in the context of motions for summary judgment and/or trial on the merits and are therefore distinguishable from this case where liberal standards of pleading apply. See, Crowley, 76 F.3d at 49.

16

IV.   Arguments Advanced by the Dlugoleckis

   A.   Mootness

The Dlugoleckis argue that because the Petrusos prevailed in their Article 78 proceeding this action is moot. It is well settled in this circuit that an Article 78 proceeding does not necessarily bar a subsequent civil rights proceeding. Colon v. Coughlin, 58 F.3d 865, 870 n.3 (2d Cir. 1995); Stubbs v. De Simone, 2005 WL 2429913 *13 (S.D.N.Y. 2005). While Plaintiffs did, indeed, succeed in having the decision to revoke their building permit vacated, the claim and relief sought here – damages for the violation of civil rights – are different. Additionally, the only issue reached by the Article 78 court was the timeliness of the Dlugolecki's appeal. There was no finding as to a civil rights violation that would in any way effect the ruling here. See Anderson v. Perales, 2006 WL 1555605 *5 (S.D.N.Y. 2006); Cepeda v. Coughlin, 785 F. Supp. 385, 388 (S.D.N.Y. 1992). For the foregoing reasons, the court holds that the Article 78 proceeding does not render this case moot.

   B.   Sufficiency of the Conspiracy Claim

Plaintiffs allege no state action on the part of the Dlugoleckis and therefore state no claim for a direct violation of Section 1983. See Sykes, 13 F.3d at 519. Plaintiffs' claim against these Defendants is limited, instead, to allegations of a conspiracy among the Dlugoleckis and the members of the BZA. Such claims are not alleged pursuant to 42 U.S.C. § 1985, the civil rights conspiracy statute, but are alleged only pursuant to Section 1983. The factual allegations set forth in support of this claim are set forth above and include, inter alia, the claim that these Defendants conspired to violate the Petrusos' equal protection rights by treating them differently from other citizens and by concocting a scheme to circumvent the clear statute of limitations.

17

Private individuals who are not state actors may nonetheless be liable under Section 1983 if they have conspired with or engaged in joint activity with state actors. Briscoe v. LaHue, 460 U.S. 325, 330 n.7 (1983); Adickes v. S.H. Kress & Co., , 398 U.S. 144, 152 (1970); Ginsberg v. Healy Car & Truck Leasing, Inc., 189 F.3d 268, 271 (2d Cir. 1999); Annunziato v. The Gan, Inc., 744 F.2d 244, 250 (2d Cir. 1984); Puletti v. Patel, 2006 WL 2010809 *6 (E.D.N.Y. 2006); Storck v. Suffolk Cty. Dep't. of Soc. Servs., 62 F. Supp.2d 927, 940 (E.D.N.Y. 1999). Allegations of conspiracy can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." Fariello v. Rodriguez, 148 F.R.D. 670, 677 (E.D.N.Y. 1993), quoting, Chodos v. Federal Bureau of Investigation, 559 F. Supp. 69, 72 (S.D.N.Y.), aff'd., 697 F.2d 289 (2d Cir. 1982), cert. denied, 459 U.S. 1111 (1983).

Similar to the holding above, the court holds here that the allegations in support of a conspiracy are sufficient to survive this motion to dismiss. Whether those allegations remain sufficient after discovery is an open question.

In view of the foregoing, the court denies the Dlugoleckis' motion to dismiss and clarifies that the sole cause of action against these Defendants is a conspiracy claim pursuant to Section 1983.

V.    Arguments Advanced by the Village Defendants

A.    "Official Capacity" Claims

The individually named Village Board of Trustees are sued in their official capacities. Claims against individual officials in their "official" or "professional" capacities are identical to claims brought against the governmental entity itself. Orange v. County of Suffolk, 830 F. Supp.

18

701, 706-07 (E.D.N.Y. 1993); see Wallikas v. Harder, 67 F. Supp.2d 82, 83-84 (N.D.N.Y. 1999). Where, as here, the entity is named, it is redundant to allow the lawsuit to continue against individuals in their official capacities. Orange, 830 F. Supp. at 706-07. Accordingly, the court dismisses the official capacity claims against the Village Board of Trustees.

B.      Substantive Claims Against the Village

Plaintiffs' claim against the Village Defendants alleges that they knew about and, despite having the power to intervene, failed to prevent the violation of Plaintiffs' civil rights. These facts are alleged in support of claims pursuant to Sections 1986 and 1983.

1.      Section 1986

Section 1986 provides for a cause of action for failure to prevent a Section 1985 conspiracy. 42 U.S.C. § 1986. This section is tied specifically to Section 1985 and does not set forth a general cause of action for failure to prevent any violation of Section 1983. See Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996); Dwares v. City of New York, 985 F.2d 94, 101 (2d Cir. 1993); Abdi v. Brookhaven Science Assocs., LLC., 447 F. Supp.2d 221, 227 (E.D.N.Y. 2006). In view of the fact that Plaintiffs fail to allege a Section 1985 conspiracy, the claim pursuant to Section 1986 must be dismissed. Graham, 89 F.3d at 82 (dismissing Section 1986 claim where complaint contained no allegation of Section 1985 violation).

Even if Plaintiffs alleged a Section 1985 conspiracy on the part of the Village (which they do not), such a claim would necessarily fail. As noted, allegations of a civil rights conspiracy must allege particular overt acts. Fariello, 148 F.R.D. at 677. Unlike the specific factual allegations offered in support of the conspiracy claim against the BZA and the Dlugoleckis, Plaintiffs allege no facts in support of any notion that the Village conspired with any other party

19

to violate Plaintiffs' civil rights. Accordingly, even if a Section 1985 conspiracy were alleged to support the Section 1986 claim, the claim would nonetheless be subject to dismissal.

2.    Section 1983

Plaintiffs' assertions regarding the failure to prevent a civil rights violation by the BZA are also alleged pursuant to Section 1983. Thus, Plaintiffs argue that knowledge and failure to prevent an impending civil rights violation amounts to the deprivation of an independent constitutional right. In light of the fact that Section 1986 sets forth clear parameters for stating a claim to violate a civil rights conspiracy, it is unclear whether, independent of that section, such a claim may be stated pursuant to Section 1983. Even if such a claim could, in the abstract, be stated, it would not exist under the facts here.

New York State Village Law establishes zoning boards of appeal. See N.Y. Village L. §7-712. While such boards are appointed by local village boards of trustees, members of the appointing village board are prohibited from serving on the zoning board. N.Y. Village L. §7-712(3). Village trustees do not control the operation of the zoning boards. Instead, zoning boards are vested by law with independent appellate jurisdiction to review decisions of administrative officials concerning local law. N.Y. Village L. §7-712-a(4). Such decisions may be affirmed, reversed or modified in any way that the zoning board rules such decision should have been made by the administrative official. N.Y. Village L. §7-712-b(1).

The Manorhaven Code provides for powers of the BZA in accord with those set forth in the New York Village Law. See Manorhaven Code §155-60. It is thus clear that under New York State and local law, the Village never had the discretion to take part in any decision made by the BZA and there are no allegations sufficient to support the existence of any conspiracy that

20

took place outside of the confines of local law. It follows, therefore, that the Village had no power to intervene or take any pre-emptive action to prevent any impending civil rights violation of the BZA. See Moriarty v. Planning Bd. of Village of Sloatsburg, 119 A.D.2d 188, 506 N.Y.S.2d 184 (2d Dep't. 1986) (village board is without power to consider appeal from grant of a permit); 113 Hillside Avenue Corp. v. Village of Westbury, 27 A.D.2d 858, 858, 278 N.Y.S.2d 558, 559 (2d Dep't. 1967)(village board of trustees without power to review acts of building inspector, such power being vested exclusively in the village zoning board). Accordingly, even if a Section 1983 cause of action to prevent a civil rights violation exists, no such claim can be stated here.

Plaintiffs' complaint sets forth no cause of action asserting that the Village failed to properly train the members of the BZA. In their legal memoranda submitted in opposition to the motions to dismiss, however, Plaintiffs raise the issue. In an abundance of caution and in an effort to construe the complaint most liberally in Plaintiffs' favor, the court considers whether Plaintiffs state a constitutional claim for failure to train.

Municipal liability pursuant to Section 1983 for failure to train arises only where a plaintiff can show: (1) the policy maker's knowledge that its employees will confront a particular situation; (2) that the situation presents the employee with a choice that could be made less difficult with training or that there is a history of mishandling such situations and (3) that the wrong choice will frequently cause the deprivation of constitutional rights. Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992). Applying these standards it is clear that no claim for failure to train is stated. First, as noted above, the members of the BZA are not employees, in the traditional sense, of the Village. While the Village has statutory authority to appoint and

21

approve of the naming of individuals to the BZA, the Village does not take part in or critique the proceedings of the zoning board. Instead, the BZA possesses broad discretion that is not subject to review by the Village. Even if the BZA members were Village employees, it is difficult to discern how a failure to train theory could be supported on the facts here. Plaintiffs set forth no facts to show that the wrong choice made in the type of situation present here – the review of the legality of a rooftop deck – will frequently cause the deprivation of a constitutional right. Additionally, Plaintiffs nowhere allege either how additional training would make a difficult decision easier or a history of mishandling such situations. In short, Plaintiffs allege no facts, either in their complaint or memorandum of law, to support any constitutional claim of a failure to train or supervise the BZA. Recitation of the single incident alleged in the complaint, coupled with a bare allegation of a failure to train, is insufficient pleading to survive a motion to dismiss. Dwares, 985 F.2d at 100.

## CONCLUSION

For the foregoing reasons, the defense motions to dismiss the complaint are granted in part and denied in part. All claims against the Village of Manorhaven and its Board of Trustees (defendants Capozzi, Wilson-Pines, Tomlinson, Dilucia and Dileo) are dismissed. All due process claims against those defendants that remain are also dismissed. All claims pursuant to Section 1986 are dismissed. The remaining claims are an equal protection claim against the BZA Defendants and a Section 1983 conspiracy claim against the Dlugoleckis. These remaining claims may proceed to discovery.

22

The Clerk of the Court is directed to terminate all motions to dismiss and the parties are directed to proceed with discovery as to those claims that remain.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
February 14 , 2007